And the next case we'll hear is Espinoza v. Atlas Railroad, Pellet No. 16-1413. May it please the court, my name is Pete Weinbrake and I would like to reserve three minutes for rebuttal. I represent Rafael Espinoza, he's an hourly laborer from Chambersburg, Pennsylvania. And as you know from the briefs, he had a job where he'd be required to travel hundreds of miles to remote work locations and work generally eight consecutive days. And what we seek in this case, which is a Pennsylvania Minimum Wage Act case, is Mr. Espinoza, on behalf of himself and others, is seeking to recover for some of the travel time that he necessarily spent before the first of the eight days traveling to the location and sometimes after. How do you get around the fact that the traveling was not done on what you could reasonably call normal hours worked, regular working days? The statute is very clear, it's completely different than the Fair Labor Standards Act. And the travel has to be done under the state law has to be done on hours worked on regular working days. Well, the state law, Your Honor, it says normal working hours. Can I ask a question more basic, excuse me, to this whole thing? Should we certify this issue to the Pennsylvania Supreme Court, whether the Pennsylvania Minimum Wage Act covers scheduled work days when you're talking about travel or does it not? Should we certify that issue to the Pennsylvania Supreme Court? I think we should, Your Honor. I think there's an even more compelling reason why you should certify the question, however. The reason that this is an important case, it's an important case to Mr. Espinoza, and it's an important case because the issue that Judge Roth just articulated is an important issue. You never asked that in a brief, you never asked that. I did not. Why not? Now all of a sudden you want to certify it? You're here before us and we're prepared? Well, I'm the one who's prepared to argue the case. I know, but I appreciate it. I think the court, that's a good question. But my question is, why didn't you want it certified? You never asked it to be certified before it was suggested by our court. You're right, I didn't. So why did you change your mind all of a sudden? I didn't change my mind. I responded to Judge Roth's question asking if I think it should be certified. But your brief never asked that it be certified. Well, Your Honor, my understanding of the rules is that the court, in its discretion, can sua sponte certify a question. I feel very comfortable with the panel addressing this issue. That's true, but generally speaking, if the litigant wants something certified, they set it forth as part of their briefing. I can't say that this question being certified to the Supreme Court is overly important to me. However, I do think that if this court, you know, your honors are the ones, I think, who can view whether a question should be certified to the Pennsylvania Supreme Court in context. I'm a wage and hour lawyer. To me, all of these cases are really, really important. But I don't know that, to the judges on the Third Circuit, what you perceive as being worthy of certification to the Pennsylvania Supreme Court. I appreciate that, but my question is, why should we certify it? And it's a legitimate question, whether brought up by you or by the courts who are funding. When the wording here is not subject to any dispute as the wording, it seems to be clear to me, unless I'm reading something I shouldn't be reading, and there doesn't seem to be a lot of, at least in my mind, there doesn't seem to be a lot of dispute as to what the words mean. It's not ambiguous. I would respectfully disagree with that, your honor. The terminology that I think you're referring to is, from the regulation, the term normal working hours. And what does that mean? When we look at the federal regulations addressing travel away from the home community, there is no such regulation under Pennsylvania law, but that's almost always the case, because the federal regulations are so much more detailed. But the federal regulations use that same word, that same phrase, normal working hours. And what does it mean? What does the phrase normal working hours mean? Well, I would say that the phrase normal working hours means that the hours during a day in which an employee works. So it actually performs a task? Like 9 to 5? Like the hours that, 9 to 5, yes. So if my normal working hours are 9 to 5 on Monday, and I drive on Sunday somewhere between 9 and 5, is your position that I, if I were your client, had a job like your client, is your position I should be paid for that travel time because I did it between 9 and 5? Yes. Even if I didn't do it on a scheduled work day? Absolutely. Hour of the day I perform that driving task. Yes, and that's precisely what the fair labor standard regulation, which also uses the same terminology, normal working hours. The federal regulation uses that normal working hours. The federal regulation explicitly says that if your normal hours are 9 to 5, and you're traveling on a weekend between 9 to 5, that's during your normal working hour. It says, yes, it says when an employee has to travel away from the home community, this is 29 CFR 785.39. Here's the problem, I think, though, in trying to lean on the FLSA, is that this regulation has something else, and it requires that the time spent traveling as part of the duties of the employee during normal working hours. So you have this duty overlay that's not in the FLSA. So tell us how he's performing a duty during those normal working hours when he's driving to the destination of his employment. All he's doing is commuting. It happens to be a long commute, but all he's doing is getting to the destination so he can do his job. I don't think it is commuting, Your Honor. This is not a commuting case. This is a travel away from the home community case. And it's not unusual. Let's just take Mr. Espinoza. He has a job that requires him to go to these remote work locations. Part of his duties, and remember, it's part of his duties, plural. Part of his duties is to go to those locations. But that's true of every employee who doesn't work at home. They have to travel from their residence to the destination. The fact that your client has to drive a longer distance, I think you're asking us to say makes it part of his duty. And if that's your position, where do we draw the line? You draw the line, Your Honor, by looking to the federal regulations. But the problem is the federal regulations doesn't have a duty element. But, Your Honor, and I think... And interpret it consistent with the federal regulation of the Federal Labor Standards Act. Is that your position? Sure. Your position is quite odd, for me anyway, since the Pennsylvania Supreme Court gave the fact that the district court ruling on the grounds that it contradicts the well-established principle of the state act to give travel for this type of transportation. And you want us to certify it so that they will interpret that consistent with the Federal Labor Standards Act. But why would we certify something? We know what the federal law is. We don't want the state Supreme Court to tell us what the Federal Labor Standards Act is. But you want the interpretation of the state act to be consistent with the Federal Labor Standards Act. Yes. So why would we certify it to the Supreme Court? I think one of the reasons why the court may want to certify it to the Supreme Court is this is a really important issue. The extent to which... Remember, Your Honor, the PMWA regulations are extraordinarily sparse. There is no legislative history to the PMWA. There is no explanatory comment to any of the regulations. And there is very little case law. And for Wage and Hour practitioners and for Pennsylvania trial court judges, it is extraordinarily important that we be able to look to the more detailed FLSA regulations for guidance in interpreting the PMWA. We're dealing here with the state act. And the state can make any act they want. And we, on a diversity case, interpret the state act. But why would we want to incorporate a federal act into a state act? Because that's... Because under the Commonwealth Court Stuber case, under the Pennsylvania Supreme Court's Beata case, we know, and from the various district courts' opinions, this court's unpublished opinions in Baum and Itterley, courts, including this court, consistently look to detailed FLSA regulations to fill in the gaps. But here the problem is it's the opposite. Here we have a detail in the Pennsylvania regulations. No, it's not the opposite. It's the same. No, no, no. What I wanted to say was that in this particular case, the Pennsylvania regulation has a duty requirement, that you have to be performing a duty when you're traveling. That's not in the FLSA. And that's why I'm not sure those cases where the court has looked at the FLSA for guidance is helpful. But here we've got this extra duty component. And when you look at the Portable Act as compared to the federal regulation, the state regulation, there's a difference between them. And so to read into it would be perhaps acting inconsistently. There's a couple points I want to make in response to Your Honor's question. First of all, and it is easy to get this confused, this is not a portal-to-portal scenario. I know that. Okay. Secondly, with respect to Your Honor's duties question, when we look, and I would refer the court to the cases cited at page 9 of the reply brief, when we look to the federal cases interpreting the FLSA's travel away from the home community regulation. Why don't you just bring your claim under the FLSA? It would be a lot easier for you. And I guess it's because the others can opt out. But you could have a lot easier. What you want us to do is give you the benefit of the FLSA without the burden of having a collective action. So you can bring a Rule 23 piece. Isn't that really what's motivating your request to us? I agree in part. I agree that my client and the putative class wants the benefit of Rule 23. I disagree. I disagree that we want the benefit of the FLSA. We want the benefit of the PMWA. Yeah, but you want it interpreted pursuant to the Fair Labor Standards Act. Absolutely. You make a statement, you want something in favor of the, consistent with the Fair Labor Standards Act. But you don't have the Fair Labor Standards Act. You've got a different act. I agree, Your Honor. But the PMWA regulations, where the FLSA regulations provide more detail, which is exactly what's happening here. We're taking this one sentence in a PMWA regulation that's meant to encompass all travel time issues that arise. Travel time at the beginning of the day. Travel time during the day. Travel time at the end of the day. Travel time away from the home community, as we have here. In one little sentence. And we need to be able to look at those detailed FLSA regulations to flush this stuff out. This is what happens in so many cases. In the Baum v. AstraZeneca case, where Judge Roth sat on the panel. That case was a PMWA case arising, and the question was whether the salaried employee was exempt under the administrative exemption to the PMWA. The regulation for the PMWA administrative, it's this big. It's a few sentences. When the panel delved into that issue, they looked to all the detail in the FLSA administrative regs. I know that, Your Honor, Judge Schwartz, I know that you handled an FLSA collective action when you were a district court judge. Think about those jury instructions. All of that detail. What's the primary duty? What is management? None of those concepts exist in the PMWA regulations. I understand that. I also was a magistrate judge, but that's okay. We necessarily, not just lawyers, but judges necessarily have to look to these detailed FLSA principles for guidance. Thank you, counsel. I have one question on subject matter jurisdiction that I just want to confirm. Your adversary removed this case from state court. In the notice of removal, he says that the attorney's fees will likely get this to the $75,000. But he also relies on a provision in the pleading in state court where I gather you had to allege that your amount of loss, your client's amount of loss exceeded $35,000 to get out of the compulsory arbitration program, I guess, in state court. My question is, how do you get to $35,000 in this case to get out of that where you had an 11-month period, he took four trips a month? How do we get to that number? You don't. Before we even start certifying the question, I want to make sure we have subject matter jurisdiction. Your Honor, this has happened, and this may have been a mistake by me, frankly. When you plead a class action and you fill out those forms, it's not really always clear whether, when you state what the amount in controversy is, whether it should be for the individual class representative or for the class. And when we filled out the form, frankly, and we said it was worth over $35,000, we meant as a class action it's worth over $35,000. Mr. Espinoza's individual claims, absent statutory fees, would never come close to $35,000. So should we be reflecting on whether we have subject matter jurisdiction here? Well, maybe so. That's not a bad answer. That's a good point. I mean, why shouldn't you fill it out? This is a primary question. Again, just as I think the court is free to certify the question, I think obviously the court is free and has to address this jurisdictional issue. We did not oppose the removal because, frankly, the reason for that is we felt that, well, defendants made a good point in saying that the attorney's fees can drive things over $75,000. We have to bring this up to a spot and forget about opposing. How can we hear this case? There's not a sufficient amount involved. Your Honor, I don't know. I mean, obviously if the court concludes, and we know that subject matter jurisdiction can be decided at any stage in the proceeding, and I know that this panel has an obligation to address that issue, if the court would request supplemental briefing on that point, maybe that's something that the panel would choose to do. If we were only evaluating, if we couldn't collapse the entire classes, perpetuative classes loss, and it was just your client, because this isn't a CAFA case, this is a Rule 23 straight case, what's the amount of dollars of your client's loss? It's hard to know in the absence of the data, which we don't have because we never got into discovery. Well, your client knew how many hours he traveled or else. Well, they would also have to be only the hours during normal working hours. Keep that in mind too, your Honor. But I suspect that Mr. Espinoza's, in fact, we settled an FLSA case along these lines for I think seven or eight workers, and I want to say that maybe each person got $25,000 to $3,000. Do you know what his hourly wage was? Was he paid it by the hour? He made around $13 an hour. Okay. So it really, we don't get any, you know, maybe $5,000 hops. Remember also there are no liquidated damages under the PMWA, so we don't get the doubling. It really, you need attorneys, you need prospective attorneys to drive that up. That's the only way. And I apologize if we filled out that form incorrectly, but when we said over 35, we were referring to the class. Thank you for your clarification. And for your argument, we'll see on rebuttal. If you don't mind, I'd like to start with the subject matter jurisdiction question because you folks are the ones that removed it. You folks know how much these folks were making, $13 an hour. I'd be happy to, Your Honor. My name is Stanley Weiner. I represent Bay Road Construction, LLC. Counsel is exactly correct. The basis upon which we removed the case was based primarily on attorney's fees and reliance on their representation. And the expectation is the certification was for the class, not for Mr. Espinosa. That's how you understood it? Correct. Yeah. Okay. So do you believe there's sufficient information in front of us to exercise subject matter jurisdiction over this case? I do. And that is based upon the attorney's fees? Correct. Even if his client were to prevail and it doesn't get certified as a class, the fees would still be, if it's $13 an hour, if it's $4,000, the fees would be at least $71,000? We believe attorney's fees in cases like this are often, whether it's an individual case or a seven-person case like a Herrera case, which he has filed against our client, which is referenced in the record. The cases are, in fact, I would suspect $70,000 would be conservative to take this case from beginning to end. Okay. Thank you for the answer to that question. I'm sorry to give you a question as you're walking to the podium. That's okay. I expected it after I heard the question directed at him. But the panel is focused on the fundamental question before the court, and that is the difference between the Pennsylvania regulation and the FLSA regulation. We do not dispute that there are appropriate times when you can look to the FLSA regulations and case law decided under those regulations for guidance to fill in gaps where there are similar statutes. What about certification? Why don't we talk about that before we talk? Excuse me? What about certification to the Pennsylvania Supreme Court? I mean, it's a Pennsylvania statute. Shouldn't the Pennsylvania Supreme Court take a look at it? If there is a consistency of referral to the FLSA regulations in interpreting the Pennsylvania Minimum Wage Act, shouldn't the Pennsylvania Supreme Court be the one to determine whether in this type of situation there should be a similar referral to the FSLA regs? I have several responses to that. First, it's a little late in the process for the concept of certification to arise. The history here was there was an original complaint filed, but we removed federal court. We immediately recognized the deficiency on the very issues that are before us of the concept of work, that travel is work under the Pennsylvania regulation. It is not under the FLSA. Well, you're getting to the merits now. Bear with me if you could for one second. We then sought a paradigm to test this by having them amend the complaint. The complaint was amended. The district court agreed that we would then file a motion to dismiss. That briefing has occurred from the beginning to the end. The district court rendered a decision. The district court also gave opportunity for leave to amend. We've now fully briefed this case, and we're here in the Third Circuit, and only today did counsel raise the possibility of certification and only in response to the question from the panel, number one. Number two, there are material differences in the regulation. The Pennsylvania Labor and Industry Department has made it clear that this is a different rule. It has used different words, and in an interpretive bulletin, which we have cited in our brief, it has talked specifically about how only if travel involves certain things, clocking in, loading up, et cetera, and I'm quoting the regulation, the bulletin, is travel compensable, that otherwise travel from home to work and vice versa is not compensable. But that's commuting. Right, and that is clear. As Judge Schwartz' question focused on, is this regulation is materially different. It is not a matter of filling in gaps. It is not a matter of silence, as there has been the case, for example, in sleeping time when the courts have looked to the FLSA to fill in the gap when there's nothing said. And the irony here is that, you know, if you really cut through it, the plaintiff's argument appears to be that, ironically, scales of justice literally weigh. Wherever the regulations are longer and heavier, you look to those, and because Pennsylvania's skinny little regulations are not as expansive as the FLSA,  Well, the irony is at the very same time that these skinny little regulations on hours worked that include the component of work being required as an element of travel for it to be compensable, the Department of Labor also in Pennsylvania adopted the identical regulation definitions of exemptions for administrative, professional, executive, and outside sales, virtually identical to what the Department of Labor had done at the federal level. They know how to do it if they want to. So from your point of view, if this individual were performing a task while traveling, hypothetically, like the Sears maintenance guy who's checking in with headquarters to find out where to go next, or if he even got, say, there was a briefing that needed to take place so that the shift transitioning in would know what they needed to perform when they arrived at the site, if he were, say, on a speakerphone while driving and they were briefing him on the next task to perform, that might be working. That might be working. But in this case, based upon the allegations and all that's all we have, the only thing we know is he had to travel long distances, that the employer set the place to which he had to report, that if he didn't travel that distance, he'd be terminated. Is that, do we have any other allegations about what the context of the work while traveling is? No, Your Honor. If the allegations had said he gets reimbursed for his mileage, or if the allegation said he's covered by workers' compensation when he's traveling, or if the allegation said what I just described, sort of this, you're participating in a phone conference safely, hands-free, that would all perhaps change the matrix. Do we have a pleading problem in this case? We have a pleading problem that there was an opportunity to cure that the plaintiff chose not to cure. The plaintiff has chosen to this very moment to stand on their complaint. What if the contract, what if the agreement, if there were an agreement between the employer and the employee, had some language about what one's duty was, and expressly said one's duty includes arriving on time? Would that make the travel to achieve that goal work? I wouldn't think so, Your Honor. I think everyone has to arrive on time. That's an implicit, whether implicit or express duty. And the slippery slope that this court is being asked to follow would necessarily not be limited to travel. There are lots of other things that are prerequisites to doing your job. You have to get dressed in the morning. People have to wear a certain type of clothes. You have to eat. Before you can commence your duties, you're saying. Exactly. Well, and judges get paid travel expense to get to court when they come from far away from the Third Circuit. The nonresident Philadelphia judges get paid to come to the court. They don't get paid to go to their office every day, but when they are called far away from home to do a duty, they get their travel reimbursed, and they don't have to read briefs on the way. They can read a newspaper if they want to. But, Your Honor, you're talking about expenses. No, I'm talking about the travel. I'm talking about the travel expenses. Right. Travel expenses are... And we're paid our wages, too. Correct. But as these employees, this is just a commute. You would have to basically disregard the regulation and ignore the language the regulators decided to use when they could have used the very language under the FLSA. And the FLSA doesn't call this work or hours work. It talks about corresponding hours on nonworking days. Who pays for the motel or the place where they stay at the work site? That is the employer. The employer does. So that's an acknowledgement that they are considered to be staying at home. They are considered to be moving to the employer's choice of location away from their home. If they choose to travel to that location as opposed to go back to their home. No one tells them that they have to. Well, if it's 600 miles away, they can't go home every night. But there are going to be other people that that's not the case. This is not a matter where there's a contract or a policy that something automatically happens. It's based on the individual circumstances. But going back to the FLSA regulation, it doesn't call this working time. It is corresponding hours on nonwork days. So even under the FLSA, that regulation can't be jammed into the Pennsylvania paradigm because it requires work. It is admittedly not work. And, in fact, as the dissenting judge justices acknowledged in Chiarelli, Pennsylvania never adopted the Portal to Portal Act. This is not a Portal to Portal Act case, as counsel indicated. But the regulations that these travel time regulations that were issued under the FLSA were promulgated under the Portal to Portal Act. So they should be given no weight whatsoever. They made a decision, mainly the policy decision of the Department of Labor at the federal level, that certain things are going to be deemed compensable whether they are work or not. Do you think it should matter in this case? The complaint alleges that the way the work schedule was you'd work eight days, the ten-and-a-half-hour shift, which was that's 730 to 5? I think it's 7 to 530. 7 to 530. So you work those. Those are the hours you work. Those are the days you work. And then you have, quote, then you're off for four days. Is that right? Six days, I believe. You're off for six days. Two of those days you're involved in travel. Not necessarily. Well, doesn't the complaint allege that the travel occurs on the day after the work? The complaint alleges lots of things. And, as the district court found, it was very confusing. Sometimes you use daylight hours. Sometimes talk about non-scheduled days. The complaint is all over the map in that regard. Okay. Thank you. Going back to the definition of normal working hours, I'm wondering if you and your adversary agree that that means the hours one works, in this case the 7 to 530, regardless of the day on which it's performed. Is that what normal working hours means? Or does it mean something else? I believe it does mean that under the Pennsylvania regulation. But, as the court noted, the Pennsylvania regulation adds the work component to it. So it has to be perform a work task during the hours, for this situation, 7 to 530, on whichever day you do it. But you've got to be performing a work task during those hours. Correct. Okay. If the panel has nothing else, I have nothing further. All right. Thank you for your argument. So did I hear you folks agree on the interpretation of what normal working hours means? I think we do, Your Honor. I think the question is whether when travel on the non-scheduled day cuts across those normal working hours, it's compensable or not. I do want to follow up on Your Honor's last point. And from some of the questions to me, I know you're very concerned about this issue of what constitutes work or duties while someone is in transit. And I would submit to the court a couple things there. Number one, driving hundreds of miles to Lima, Ohio or Massachusetts is in and of itself work. Okay? And all that the reg requires. It's work, but is it really regular work, the hours? Well, that's a different issue, Your Honor. But focusing on Judge Schwartz's focus, and I'll turn to that in a moment, focusing on whether it's part of the duties, it's not counterintuitive, especially in light of the statute's broad remedial purpose, to say that when a manual laborer has to travel 400 miles to Lima, Ohio to do his manual labor, that just the act of driving, even if they're doing nothing else, that that act of driving is part of his or her duties. But if the person lived an hour away and had to get to Lima, Ohio to perform the same task, from what you just said, the person who's an hour away would get compensated too? No, because now we're into the world of commuting. So where is the line?  The line is not specifically drawn in the PMWA regs because they're not detailed enough, but it is specifically drawn in the FLSA regs, which makes this distinction for travel away from the home community, also known as overnight travel. And when one has to travel away from the home community, and the travel is such that it cannot be commuting, it cannot be done on the same day that the work is performed, those are special circumstances. Yeah, but you're suing under a different act. You're not suing under the Federal Standards Act. We are, Your Honor, but what we're requesting, as has been done many, many times, is even though the PMWA regs aren't detailed enough to deal with that circumstance, the court should look to the FLSA regs for guidance. Let me give you an example. Judge Mitchell in the Galloway case, which is cited in the brief, found that under the PMWA, workers under certain circumstances are entitled to be paid for time spent sleeping. If this court looks at the PMWA regulation, you will see no reference. You will not even see any insinuation that a worker should be paid for sleeping time. But because the FLSA has regulations that further expand on the concept of compensable work and actually has specific regulations that deal with sleeping time, Judge Mitchell was willing to look to those federal regulations in addressing the issue of whether sleeping time could constitute work under the Pennsylvania Reg. This happens all the time. And if it doesn't happen, I want to emphasize this to the court, without being able to look to those detailed federal regulations and federal decisional law for guidance, we are operating in many, many PMWA cases totally rudderless. Totally rudderless. There is no decisional law on so many of these topics. There is no legislative history. There is no explanatory materials. If Pennsylvania wants to explain their act a little bit broader than it is being interpreted, they have a very simple way of either passing regulations or rewriting the act. The act as written now requires actual work days. Two points in response. First of all, I respectfully disagree that it requires actual work days. It requires that the work be performed during normal working hours, which is a time of the day concept, not a work day concept. But secondly, it's just the reality, Your Honor, I know that in theory the Pennsylvania Department of Labor and Industry could go and fix all these things by implementing detailed regulations. But in 40, 50 years, it just hasn't done that. And those of us, including judges, who have to operate under these sparse regs, we need something to look to, just like Judge Vanaski did in a case that I cited, just like this panel did in Baum and Airey, just like Judge Mitchell did, just like Judge Yon did in a case that I cited in the brief. In all these cases, we look to those detailed FLSA regs for guidance. And if we don't do that, we're going to be operating in a situation where every, remember, the great majority of cases are hybrid cases, right? There's both an FLSA claim and a PMW making. It's going to get really chaotic when we have these different competing legal standards in every case. And I, you know, going back to the certification. Counselor, your time's up. I'm sorry. I'm sorry. Okay. That's okay. We have to continue all that you've said, though. Thank you. Thank you both for a well-argued case, and we'll take the matter under division.